**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30166 |
| Plaintiff-Appellant, | D.C. No. 4:21-cr-06037-MKD-1 |
| v. | |
| SETH CORY CUNHA, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Salvador Mendoza, Jr., District Judge, Presiding

Argued and Submitted September 13, 2023
Seattle, Washington

Before: W. FLETCHER, R. NELSON, and COLLINS, Circuit Judges.
Concurrence by Judge COLLINS.

The United States appeals from the district court's grant of a motion to

suppress evidence. Defendant Seth Cunha ("Cunha") was arrested on an

outstanding felony warrant. Detective Watson began monitoring phone calls

Cunha made in jail and overheard multiple heated discussions about a storage unit.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Detective Watson interviewed the owner of the relevant storage facility and deployed a K-9 unit at the facility. He then submitted an affidavit in support of an application for a search warrant of Unit #54. A state magistrate issued the warrant, and police discovered drugs and a firearm inside the unit. Based on this evidence, Cunha was charged with possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime.

Cunha moved to suppress the evidence seized from the storage unit, alleging that material facts were omitted from Detective Watson's affidavit. On September 1, 2022, the district court held a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The court granted Cunha's motion to suppress, finding Detective Watson recklessly omitted material facts from the affidavit and that once the missing facts were considered, there was no substantial basis for finding probable cause to search the unit. The government filed a timely interlocutory appeal. We have jurisdiction under 18 U.S.C. § 3731. Our review is de novo. *United States v. Adjani*, 452 F.3d 1140, 1143 (9th Cir. 2006). We reverse.

The parties dispute the significance of a typographical error in Detective Watson's affidavit. The affidavit stated that the owner of the storage facility confirmed Cunha rented a storage unit and told Detective Watson that "Cunha moved his property from the smaller unit to a larger one, which is not unit #54."

The government asserts the word "not" should be read as "now" and that the court may correct obvious typographical errors. Cunha argues the court must accept the sentence as written and that, read literally, the affidavit did not supply probable cause to search unit #54. We need not resolve this dispute. Even if we leave the sentence as written, the affidavit supplied sufficient cause to search Unit #54. The next page of the affidavit stated that K-9 Watts's change in behavior occurred "at Unit #54" and that "this is the storage unit that [the owner] recently observed Cunha transferring items into and is rented in Cunha's name." Additionally, the caption and conclusion of the affidavit clearly identified Unit #54 as the location of the requested search.

The district court's grant of the motion to suppress rested on the affidavit's abbreviated summary of K-9 Watts's response to Unit #54. The affidavit stated simply that the K-9 handler observed "a change in behavior" at Unit #54. The district court found Detective Watson recklessly omitted six material facts about the K-9 search: "(1) that K-9 Watts did not give a final alert at Unit #54, or anywhere in the storage facility, (2) that a K-9 unit's change in behavior carries far less weight than a final alert, (3) that K-9 Watts first passed Unit #54 *without any* change in behavior then (4) changed behavior first in front of *Unit #56*, only then changing behavior at Unit #54 on a second pass, (5) that [the K-9 handler] was

3

unsure about the meaning of *his own* K-9's behavior, so unsure that (6) he called and consulted the lead K-9 trainer, Sergeant Fulmer, who reassured him of the meaning of K-9 Watts's behavior."

We need not address the adequacy of the original affidavit, because even an affidavit containing the omitted information would have supplied probable cause to search Unit #54. Other parts of the affidavit recount that Cunha had previously been convicted of possession of controlled substances with intent to deliver, and was on supervised release for that offense when he was arrested. Cunha made multiple calls from jail where he refused to respond to his girlfriend's questions about "the storage shed" and told her not to talk about it. When interviewed by police, Cunha's girlfriend confirmed that Cunha rented a storage unit and identified the storage facility. Police advised of plans to deploy a K-9 unit to the facility, and when a friend called Cunha to tell him this update, Cunha protested vehemently and then told the friend, "First off, we don't even have a [] storage unit." Detective Watson called the owner of the storage facility, who advised that Cunha had recently moved into a larger unit: Unit #54. Detective Watson did not tell the K-9 unit which unit was Cunha's, and K-9 Watts exhibited a change in behavior outside Unit #54. The K-9 handler called a K-9 trainer who had previously spent 120 hours certifying that K-9 unit, and the trainer informed the

4

handler that the change in behavior–even absent a final alert–signified the target narcotics odor was present. While the omitted facts provide important context, the K-9 change in behavior nevertheless supports the affidavit's request to search Unit #54. In sum, even considering the omitted information, we hold that the affidavit supplied probable cause to search the storage unit.

**REVERSED.**

*United States v. Cunha*, No. 22-30166

COLLINS, Circuit Judge, concurring in the judgment:

I agree with the majority that the district court erred in granting Cunha's motion to suppress, but I reach that conclusion on somewhat different grounds. I therefore concur in the judgment.

To ultimately prevail on his claim under *Franks v. Delaware*, 438 U.S. 154 (1978), Cunha had to show, by a preponderance of the evidence, that "(1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause." *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (citation and internal quotation marks omitted). As the majority notes, the district court's suppression order was based on the conclusion that the affiant detective had "recklessly omitted six material facts about the K-9 search." *See* Memo. Dispo. at 3. But even assuming that the district court correctly found on this basis that the first prong of the above-described *Franks* test was met, the second prong was not. To the extent that the warrant affidavit's description of the K-9 search was false or misleading in light of the asserted omissions, nothing about the K-9 search was "necessary to finding probable cause." *Norris*, 942 F.3d at 910. Even if all of the information about the K-9 search "is set to one side, there remains sufficient content in the warrant

affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171–72.

The warrant affidavit states that Cunha had "previous charges and convictions involving possession of controlled substances with intent to deliver"; that he had been arrested three days earlier on a felony arrest warrant; and that several thousand dollars in cash had been found in the car in which Cunha was seated (in the driver's seat) at the time of his arrest. While in jail, Cunha's many calls on the jail phone were recorded, and the affidavit recounts several statements Cunha made during those calls about a storage unit. When one friend mentioned the unit on a jail call, Cunha responded, "Okay, can we not talk about this right now; are you f***ing kidding me right now; think about what we're talking on, please." On another call, when Cunha was informed that police were planning to "bring the dog down to sniff through the storage . . . unit," he responded, "What the f**k? No!" When the person on the call attempted to calm him down, Cunha said: "Can't talk about this on the g****** phone[,] okay, first off." Cunha then added, "First off, we don't even have a f**king storage unit, first off." The affidavit also recounts that the affiant had communicated with the owner of the storage facility that was the subject of the search warrant and that the owner had confirmed that Cunha did have a storage unit there and that he had recently moved to a larger unit. Although the affidavit states that the larger unit "is not unit #54," the "not" is an obvious typographical error, because (1) the affidavit also

2

specifically states, after discussing "Unit #54," that "this is the storage unit that [the owner] recently observed Cunha transferring items into and is rented in Cunha's name" and (2) the affidavit requests permission to search only unit #54 and not some other unit.

Cunha's great concern about a dog sniff being conducted outside his storage unit, his manifest worry that jail officials would learn about the storage unit from the calls, his prior drug-trafficking convictions, and his possession of a very large amount of cash when arrested, taken together, amply provide probable cause that contraband or other evidence of drug trafficking would be found in the unit. *See Illinois v. Gates*, 462 U.S. 213, 240–41 (1983). Accordingly, the asserted reckless omissions from the affidavit were not material, and the motion to suppress should have been denied.

For the foregoing reasons, I concur in the judgment.