NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| SETH ALBERT LOOKHART,<br><br>                        Appellant,<br><br>        v.<br><br>STATE OF ALASKA,<br><br>                        Appellee. | Court of Appeals No. A-13752<br>Trial Court No. 3AN-17-02990 CR<br><br>O P I N I O N<br><br>No. 2805 — May 9, 2025 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Michael L. Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge HARBISON.

Seth Albert Lookhart was convicted, following a bench trial, of eighteen counts of various criminal charges related to the operation of his dental business. The State began investigating Lookhart after a whistleblower accused him and his co-defendants — Lookhart Dental LLC d/b/a Clear Creek Dental (his dental business) and

Shauna Cranford (his business manager) — of engaging in an insurance fraud scheme that jeopardized the health and safety of their patients.

Following a monthslong investigation, the State obtained a warrant to search Lookhart, Cranford, and the dental business premises. The warrant authorized officers to seize dental and healthcare records, computers, and any "removable or loose computer storage media such as . . . cell phones." Although the warrant application listed "cell phones" as one of the many items the officers could seize, it did not contain any information about whether or why Lookhart's or Cranford's cell phones would contain dental or healthcare records. Nevertheless, the court granted the warrant, and the ensuing forensic examination of the cell phone data uncovered incriminating messages, videos, and photos.

Prior to trial, Lookhart and Cranford jointly moved to suppress evidence obtained from their respective cell phones, arguing that the search warrant did not satisfy the probable cause requirement of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution. After the superior court denied this motion, Lookhart filed a second motion to suppress evidence from the cell phone search. In this motion, Lookhart expanded on his argument that the search warrant lacked probable cause, and he additionally argued that the warrant lacked particularity.

While Lookhart's second motion to suppress the cell phone evidence was pending, Cranford entered into a plea agreement, resolving all outstanding charges against her. The superior court ultimately denied Lookhart's motion, and Lookhart's case then proceeded to a bench trial.

During Lookhart's trial, the State introduced videos, photos, and text messages obtained from the search of Lookhart's and Cranford's cell phones. Following trial, Lookhart was convicted of eighteen criminal offenses, including eight counts of

felony medical assistance fraud,[1] three counts of scheme to defraud,[2] and seven additional misdemeanors.[3]

Lookhart appeals his convictions, raising two related claims. First, Lookhart challenges the superior court's ruling that the warrant authorizing the search of his and Cranford's cell phones was supported by probable cause. Second, Lookhart challenges the superior court's ruling that the search warrant was sufficiently particular. In response, the State contends that (1) the warrant satisfied the probable cause and particularity requirements; (2) even if the warrant was constitutionally infirm, the evidence was admissible under the independent source doctrine; and (3) Lookhart did not have standing to challenge the search of Cranford's cell phone.

As we explain in this opinion, we agree with Lookhart that the warrant authorizing the search of his cell phone lacked probable cause and particularity, and thus violated Article I, Section 14 of the Alaska Constitution and the Fourth Amendment to the United States Constitution. We also conclude that the evidence from Lookhart's phone was not admissible under the independent source doctrine. We therefore reverse the superior court's denial of Lookhart's motion to suppress the evidence obtained from his cell phone. However, as we explain in this opinion, we remand this case to the superior court so that it may determine whether the evidence from Cranford's phone should also have been suppressed. Following this determination, the superior court must reassess its verdicts to determine whether they are supported by sufficient admissible evidence.

---

[1]   AS 47.05.210(a)(1).

[2]   AS 11.46.600(a)(2).

[3]   AS 47.05.210(a)(5) (misdemeanor medical assistance fraud), AS 08.36.315(6)(b) (practicing dentistry without a license), and AS 11.41.250 (reckless endangerment), respectively.

*Background facts and procedures*

After the Alaska Medicaid Fraud Control Unit received information indicating that Clear Creek Dental routinely sedated Medicaid patients longer than medically necessary to maximize billing, Investigator Lance Anderson began looking into these claims. Anderson interviewed current and former employees, spoke with experts in the field of dentistry, and worked with an undercover FBI agent who posed as a Medicaid patient at Clear Creek Dental. Through this investigation, Anderson discovered evidence that Lookhart (the dentist) and Cranford (the business manager) were providing unnecessary procedures to Medicaid patients, often without their knowledge, and then submitting false claims to Medicaid.

Anderson obtained a search warrant (3AN-17-00529 SW) authorizing him to search Lookhart, Cranford, and "the premises known as Clear Creek Dental"[4] for "[m]edical/[d]ental and business records . . . for Clear Creek Dental" and to seize, *inter alia*, "removable or loose computer storage media such as, but not limited to, cell phones." In his affidavit, Anderson alleged that Clear Creek Dental, its owners, and its employees, committed "Medical Assistance Fraud," and he detailed his monthslong investigation into Clear Creek Dental's business practices.[5] The affidavit did not assert that there was data on Lookhart's or Cranford's cell phones that would be evidence of a crime, nor did it specify which parts of the cell phones the officers wanted to search. In fact, Anderson's affidavit did not mention cell phones whatsoever in its description of the investigation.

The district court granted the search warrant under the parameters requested in the warrant application — *e.g.*, it authorized the police to seize and search

---

[4] The search warrant application also noted that Clear Creek Dental was "doing business" under the name Lookhart Dental LLC.

[5] AS 47.05.210(a)(1)-(2), (a)(5) (setting out the elements of "medical assistance fraud").

"computers" and "cell phones." The police then executed the warrant, seized Lookhart's and Cranford's cell phones, forensically examined them, and found incriminating text messages, videos, and photos on both phones.

Following this search, the State charged Lookhart, Cranford, and Lookhart Dental LLC with medical assistance fraud, scheme to defraud, first-degree theft, and over twenty misdemeanors. Lookhart's and Cranford's cases were joined for trial.

Prior to trial, Cranford moved to suppress the evidence obtained from her cell phone, arguing that the warrant application did not provide probable cause that evidence of medical assistance fraud was located on the phone. Cranford noted that Anderson's affidavit did not discuss "cell phones" and did not indicate that she and Lookhart used cell phones to communicate about work matters. Lookhart filed a notice that he was "joining" Cranford's motion and adopting her legal arguments.

The superior court denied the motion to suppress. The court held that because there was probable cause to search the dental business's *computers*, there was also probable cause to search Cranford's and Lookhart's *cell phones* because "modern day cellphones are computer devices." Additionally, the court found that Cranford and Lookhart were alleged to be "co-conspirators," and accordingly, that it was reasonable to infer that they had communicated about their conspiracy using cell phones.

Approximately ten months later, Lookhart filed a second motion to suppress evidence from the search of "cell phones." In this motion, Lookhart provided additional support for his argument that the search warrant lacked probable cause, and he also argued that the warrant was insufficiently particular.

The State opposed this motion on strictly procedural grounds, arguing that it was untimely and successive. The superior court denied the motion on the merits, again finding that the search warrant was supported by probable cause, and finding in the first instance that the warrant was sufficiently particular.

While Lookhart's second motion to suppress was pending, Cranford entered into a plea agreement to resolve all of the charges against her. As required by

this agreement, Cranford and her attorney signed a document that the State prepared, which was titled "Consent to Search Phone." This document stated that "both Cranford and her counsel assert and agree that Cranford is knowingly and voluntarily waiving any objections and giving consent to search the contents of her cell phone."

One week after Cranford's plea agreement was executed, Investigator Quinten Warren prepared an unsworn addendum to the original search warrant (3AN-17-00529 SW). The addendum described evidence that had been discovered when the warrant was executed, including evidence taken from Cranford's phone. It then stated that Cranford had subsequently "consented to an unfettered search of all the contents of her iPhone," and that text messages, videos, and photos previously found on Cranford's phone implicated Lookhart in criminal activity. The addendum stated that Warren was "seeking additional permission to further search the contents of Lookhart's iPhone for additional evidence regarding the aforementioned crimes."

Warren apparently submitted the addendum to a district court judge. The judge's signature and initials appear on the addendum near the handwritten words, "This request is granted."

Accompanying the addendum was a document entitled "*Cruse/Starkey* Notice." This document was signed by an assistant attorney general, and it explained that it was a "*Cruse* and *Starkey* notice related to the pending addendum to [search warrant] 3AN-17-00529SW." The notice asserted that the original warrant had authorized the State to search Lookhart's phone and that the search "has already occurred." The *Cruse/Starkey* Notice indicated that the addendum had two purposes. First, the State "wishe[d] to more fully search [Lookhart's] phone." Second, the State explained that because Lookhart had challenged the validity of the warrant, the addendum was obtained "with an eye to the Court of Appeals . . . to potentially cure a hypothetical appeal point."

At the time the *Cruse/Starkey* Notice and the addendum were submitted to the district court, Lookhart's cell phone was still in the custody of the police, and the

superior court had not yet ruled on Lookhart's second motion to suppress. However, there is no indication in the record that either Lookhart or the superior court judge were contemporaneously notified of the proceedings involving the addendum and the *Cruse*/*Starkey* Notice. There likewise is no indication in the record that an additional search of Lookhart's phone was ever conducted.

After the superior court denied Lookhart's second motion to suppress, his case and Lookhart Dental LLC's case proceeded to a bench trial. At trial, the State introduced into evidence hundreds of text messages and videos that were obtained from Lookhart's and Cranford's cell phones. In some of the admitted text messages, Lookhart and Cranford were messaging each other, whereas in other admitted messages, Lookhart was messaging with third parties.

The superior court found Lookhart, and Lookhart Dental LLC, guilty of all charged offenses. After the trial was over, but prior to Lookhart's sentencing, the State filed in the superior court a "Notice of Filing," which stated:

> The State of Alaska, Medicaid Fraud Control Unit, hereby notices the court and parties of the filing of a complete and accurate copy of search warrant number 3AN-17-00529 SW attached hereto. The State is filing a copy of the search warrant in an effort to ensure a complete record in case of appeal.

The *Cruse*/*Starkey* Notice and the addendum were attached to this "Notice of Filing."

The superior court ultimately entered convictions for eighteen offenses and sentenced Lookhart to a composite sentence of 28 years with 8 years suspended (20 years to serve). This appeal followed.

*The warrant authorizing the cell phone search did not comply with the probable cause and particularity requirements of Article I, Section 14 of the Alaska Constitution and the Fourth Amendment to the United States Constitution*

The Alaska Constitution protects the "right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures."[6] The United States Constitution sets out a similar right.[7] To protect this right, both the federal and state constitutions require a search warrant to be supported by probable cause and to "particularly describ[e] the place to be searched, and the persons or things to be seized."[8]

On appeal, Lookhart argues that the warrant authorizing the search of his and Cranford's iPhones violated these constitutional provisions. Lookhart first contends that the warrant did not establish probable cause that evidence of medical assistance fraud was located on the cell phones. Second, he contends that the warrant's description of the items targeted ("cell phones") was insufficiently particular.

When we evaluate the constitutionality of a search warrant, we view the evidence in the light most favorable to upholding the warrant.[9] We accordingly must

---

[6] Alaska Const. art. I, § 14. We have stated that Article I, Section 22 of the Alaska Constitution — *i.e.*, "[t]he right of the people to privacy is recognized and shall not be infringed" — provides greater protections against unreasonable searches and seizures than does the Fourth Amendment. *State v. Gibson*, 267 P.3d 645, 659 (Alaska 2012) ("Alaska courts have used section 22's right to privacy to give section 14's protection against unreasonable searches and seizures 'a liberal interpretation.'" (quoting *Municipality of Anchorage v. Ray*, 854 P.2d 740, 750 (Alaska App. 1993))).

[7] The Fourth Amendment to the United States Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

[8] U.S. Const. amend. IV; Alaska Const. art. I, § 14.

[9] *State v. Chapman*, 783 P.2d 771, 772 (Alaska App. 1989).

describe the contested search warrant and the trial court litigation relating to the warrant in more detail.

On February 24, 2017, Investigator Anderson applied for a warrant to search Lookhart, Cranford, and "the premises known as Clear Creek Dental" for "concealed property." He then provided the following description of the "concealed property" that officers would search for:

> Medical/Dental, personal care and business records (paper or electronic) for Clear Creek Dental, including, but not limited to on site imaging and/or seizure of internal computer hard drives, mainframe server and seizure of separate removable or loose computer storage media such as, but not limited to, cell phones, personal data assistants (PDA's), equipment having data storage capacity, floppy disks, Bernoulli disks Iomega Zip or Jaz disks, floptical or other removable storage media such as CD-ROM disks, data cartridges, storage devices or tape storage devices for audio, video or electronic. Documentation and/or other material describing the operation of any computer, software and/or computer peripherals found at the premises, including instruction manuals, passwords, file name lists, readme and/or help files.

Additionally, Anderson's affidavit provided the following description of the items that officers sought to seize:

> The seizure of electronic information by subsequent forensic examination of all electronic data at an off-site location. The seizure of any documents, electronic, handwritten or printed, related to the providing of dental related services, billing procedures, employment of staff, policies and procedures, accounting information, payroll, void or denied claims, and/or any documentation pertaining to the provision of healthcare services, policies and or procedures for providing such services including, but not limited to all Medicaid files, x-rays, photos, monitor strips, narcotic logs, medication inventory documentation and purchase invoices, prescription logs, patient treatment plans, CPR training documents, office policy and procedure material, articles, journals, publications, protocols reference books or other

written or electronic records regarding Medicaid procedures, patient and employee schedules, notes or documentation for medical necessity of services for all patients and/or employees.

The affidavit asserted that the "concealed property" was evidence of the crime of medical assistance fraud (in violation of AS 47.05.210) and tended to show that Clear Creek Dental, its owners, and its employees committed this crime.

Anderson's affidavit then summarized five conversations with former employees detailing business practices and explaining the nature of Lookhart and Cranford's relationship. According to the affidavit, one former employee overheard Lookhart and Cranford "discussing how to introduce much more IV sedation than was medically necessary [in order] to bill more." A different former employee had explained that Clear Creek Dental talked "every patient" into using IV sedation for their dental procedures, and that Lookhart "did a lot of drilling on healthy teeth." The affidavit described Cranford as the "mastermind" of making fraudulent billing look legitimate, and Lookhart as an unethical medical professional motivated by money.

The affidavit noted that Clear Creek Dental had installed a software program, "Dentrix," on a computer and used the program for billing and to organize patient information. It also described a close personal relationship — including an affair — between Lookhart and Cranford. However, other than identifying cell phones as a type of "separate removable or loose computer storage media" that Anderson sought to seize, the phrase "cell phone" did not appear anywhere in the affidavit.

The district court issued the warrant as requested. The warrant authorized law enforcement to search for the property that was identified in the affidavit's description of "concealed property," which included "loose computer storage media

– 10 – 2805

such as, but not limited to, cell phones."[10] Notably, the warrant did not authorize the police to search for or seize text messages, videos, or photos.

On March 1, 2017, Anderson executed the warrant and seized numerous items, including cell phones belonging to Lookhart and Cranford. Anderson then prepared an inventory of the property that was seized, which he filed with the court. The inventory of seized items included two iPhones, computer servers, desktop computers, USB drives, paper records, a laptop computer, and a tablet.

Following the seizure of Lookhart's and Cranford's cell phones, technicians extracted the digital data from the phones and prepared reports analyzing the data. The reports indicated that the technicians had discovered incriminating text messages, videos, and photos in the data extracted from the cell phones.

After Lookhart and Cranford were indicted, Cranford moved to suppress evidence obtained from her cell phone. She argued that the search warrant was unconstitutionally overbroad because it lacked "probable cause to believe that evidence of any crimes would be found on the cell phone." Cranford noted that Anderson's affidavit did not state that Cranford or Lookhart owned cell phones, or that they used cell phones to communicate about substantive work matters. Lookhart filed a notice that he was "joining" Cranford's motion and adopting her legal arguments.

The State opposed the motion to suppress, asserting that Anderson's affidavit established probable cause to search both cell phones. The State's opposition was focused entirely on its argument that the search warrant was valid; the State did not argue that an exception to the warrant requirement separately justified the search.

On October 3, 2018, the superior court ruled that the State had probable cause to search the cell phones, and denied the motion to suppress. The court held that Anderson's affidavit established probable cause to search Clear Creek Dental's

---

[10] The only change was that the description in the warrant did not include the term "personal care" in the first line.

computers, and that because "modern day cellphones are computer devices," this probable cause extended to the search of Cranford's and Lookhart's cell phones. The court additionally held that, while Anderson's affidavit did not indicate that Lookhart and Cranford communicated via cell phones, such communication could be inferred because Lookhart and Cranford were "co-conspirators."

On August 5, 2019, Lookhart filed a second motion to suppress evidence which cited *Pohland v. State,* a case issued subsequent to the issuance of the order on his first motion to suppress.[11] In this second motion to suppress, Lookhart claimed that, by authorizing a search of the entire contents of the cell phones without any limitations or restrictions, the scope of the search warrant exceeded the probable cause on which it was based and amounted to "the sort of general warrant that the Fourth Amendment was designed to guard against." Lookhart also claimed that the search warrant was insufficiently particular.

In its opposition, the State did not address the merits of Lookhart's motion. Rather, it opposed the motion on procedural grounds, arguing that the motion was untimely filed and was barred by *res judicata*.

The superior court denied Lookhart's motion on the merits. The court reaffirmed its previous ruling that the warrant was supported by probable cause and also ruled that the warrant was sufficiently particular, distinguishing the facts of Lookhart's case from *Pohland*. We review the superior court's legal conclusions *de novo*.[12]

---

[11] *Pohland v. State*, 436 P.3d 1093, 1100-01 (Alaska App. 2019) (holding that a "comprehensive examination" of the defendant's laptop violated the United States and Alaska Constitutions because it "exceeded the boundaries of any search that the warrant might reasonably have authorized" for "business and finance documents").

[12] *Crawford v. State*, 138 P.3d 254, 258 (Alaska 2006).

*1. The search warrant application did not establish probable cause to believe that evidence of a crime would be found on Cranford's or Lookhart's cell phones*

Lookhart's first claim is that the search warrant application did not establish probable cause to search his and Cranford's cell phones. Lookhart does not challenge the superior court's finding that the application established probable cause that he committed medical assistance fraud. Instead, he asserts that the search warrant application failed to establish probable cause that evidence of this offense would be found on his and Cranford's cell phones.

Lookhart notes that the search warrant affidavit did not state that he and Cranford used cell phones to communicate about work matters, and in fact did not discuss cell phones at all. Additionally, Lookhart challenges the superior court's findings that "modern day cellphones are computer devices" and that probable cause to search his cell phone existed as long as he and Cranford were "co-conspirators."

The State defends the superior court's findings as reasonable inferences from the evidence. Citing to *Pohland*, the State argues that in the modern world, "over 90 percent of Americans own a cell phone," and it is "common knowledge" that "many people conduct business on their personal phones."[13] The State also asserts that the court could infer that, because Lookhart and Cranford were co-conspirators in a scheme to commit medical assistance fraud, their cell phones "would contain programs or communications relating to dental services, billing, employment, policies, accounting, payroll, claims, or other matters."

As an initial matter, the State's argument misapprehends our decision in *Pohland*. In discussing the ubiquity of cell phones, we did not endorse the inference that probable cause to search a cell phone may be derived from assumptions about how common these devices are in modern life. Rather, we mentioned the ubiquity of portable

---

[13]  *See Pohland*, 436 P.3d at 1098.

computing devices to emphasize the importance of affording them strong Fourth Amendment protections.[14]

To satisfy the probable cause requirement of the United States and Alaska Constitutions, a search warrant must provide "a 'nexus' between the place to be searched, criminal activity, and the items sought."[15] Thus, in order to establish probable cause to search Lookhart's cell phone, the warrant application was required to explain not only why Lookhart was suspected of committing medical assistance fraud, but also why law enforcement expected to find evidence of that crime *in Lookhart's cell phone*.

The warrant application in this case did not provide *any* factual information about why Lookhart's and Cranford's phones would contain programs or communications relating to Clear Creek Dental's services, billing, employment, policies, accounting, payroll, or insurance claims. It did not discuss text messages, videos, or photographs, and did not provide any explanation for why Lookhart or Cranford would be storing dental or insurance records, or other business documents, in their phones' memory. And although the court could reasonably infer that Lookhart and Cranford (like most adult Americans) owned cell phones, the warrant application did not discuss Lookhart's and Cranford's use of their cell phones, nor did it assert that the officers believed that they had used their cell phones to discuss their medical assistance fraud scheme.

Under these circumstances, it was unreasonable for the court to assume that Lookhart and Cranford used their phones to communicate about their insurance

---

[14] *See id.* at 1098, 1100.

[15] *Stuart v. State*, 698 P.2d 1218, 1221 (Alaska App. 1985) (quoting *Snyder v. State*, 661 P.2d 638, 645 (Alaska App. 1983)).

billing practices or that their status as "co-conspirators" meant that they would have used cell phones to communicate about the alleged conspiracy.[16]

As we have explained, when the superior court denied the motion to suppress, it based its decision in part on its finding that "modern day cellphones are computer devices." But even if we accept that cell phones are a type of small portable computer,[17] this does not mean that whenever a search warrant application establishes probable cause to search a desktop or laptop computer for evidence of fraudulent billing, such probable cause will automatically extend to the business owner's or office manager's cell phones. Indeed, although we have characterized cell phones as "portable computing devices,"[18] cell phones often serve different functions and contain different kinds of information than laptop and desktop computers. Thus, even though the warrant application established probable cause to search Clear Creek Dental's office computers for evidence of medical assistance fraud, the court was still required to separately determine whether the application established probable cause to believe that such evidence would be found on Lookhart's and Cranford's cell phones.

The affidavit in this case did not provide *any* explanation for why Lookhart's phone would contain programs or communications relating to dental services, billing, employment, policies, accounting, payroll, or insurance claims. In fact, as we have mentioned, it did not discuss cell phones at all. Given that the application

---

[16] *See Commonwealth v. Morin*, 85 N.E.3d 949, 960 (Mass. 2017) (holding that police "may not rely on the general ubiquitous presence of cellular telephones in daily life, or an inference that friends or associates most often communicate by cellular telephone, as a substitute for particularized information that a specific device contains evidence of a crime").

[17] "Computer," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/computer (last updated Jan. 24, 2025) (defining a computer as "a programmable usually electronic device that can store, retrieve, and process data").

[18] *Pohland*, 436 P.3d at 1098.

did not contain any non-speculative indication that Lookhart's or Cranford's cell phones would contain the dental records, healthcare records, or other documents that *were* mentioned in the affidavit, we conclude that the affidavit did not establish probable cause to search Lookhart's and Cranford's cell phones.

### 2. The search warrant did not particularly describe the place to be searched

Lookhart advances a second reason why the search warrant was infirm: he contends that it lacked particularity, giving the police unconstitutionally broad discretion to search his entire cell phone for any type of electronic data that they deemed to be evidence of a crime.

The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution state that a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized."[19] This particularity requirement "serves to protect against the possibility of a general, exploratory search, to assure that articles of property outside the legitimate scope of the warrant are not subject to mistaken seizure, and to reinforce the fundamental rule that seizure of property cannot be permitted in the absence of probable cause."[20] While all warrants must be "reasonably specific," the degree of particularity required of a specific warrant is determined by the totality of the circumstances.[21]

We have previously joined the appellate courts of several other states in concluding that it is unlawful for a warrant to authorize an unfettered search of an entire

---

[19]  U.S. Const. amend. IV; Alaska Const. art. I, § 14.

[20]  *Namen v. State*, 665 P.2d 557, 560 (Alaska App. 1983).

[21]  *Id.* at 560-61.

cell phone, or all "app data" contained on a cell phone.[22] We have also explained that warrants authorizing the search of cell phones usually should contain some temporal limit — *e.g.*, they should restrict the search for data that was generated within a specific time.[23] The State nevertheless contends that the warrant in this case was sufficiently particular because it identified the types of records sought, which the State describes as "programs or communications relating to dental services, billing, employment, policies, accounting, payroll, claims, or other matters."

---

[22] *Macasaet v. State*, __ P.3d __, 2025 WL 499893, at *7-10 (Alaska App. Feb. 14, 2025) (holding that the warrant provision authorizing the search of "app data" on Macasaet's phone was insufficiently particular); *Ridenour v. State*, 539 P.3d 530, 539-40 (Alaska App. 2023) (holding that a warrant authorizing a search of any cell phone "for text messages, e-mails, phone calls, and '*any* other electronic evidence relevant to this investigation'" was insufficiently particular); *see, e.g.*, *People v. Carson*, __ N.W.3d __, 2024 WL 647964, at *8-9 (Mich. App. Feb. 15, 2024) (holding that a warrant authorizing a search of the entire contents of a cell phone was insufficiently particular); *State v. Wilson*, 884 S.E.2d 298, 300-01 (Ga. 2023) (holding that a warrant that provided a "limitless authorization to search for and seize any and all data that c[ould] be found on [the defendant's] cell phones" was insufficiently particular); *State v. Smith*, 278 A.3d 481, 497 (Conn. 2022) (holding that a warrant to search the entire contents of a cell phone violated the Fourth Amendment because it did not limit the search by describing the areas within the phone to be searched, or by a time frame reasonably related to the crimes); *Richardson v. State*, 282 A.3d 98, 124 (Md. App. 2022) (holding that a warrant authorizing a search of everything on a cell phone is not sufficiently particular); *State v. Bock*, 485 P.3d 931, 936 (Or. App. 2021) (holding that a warrant authorizing seizure of any item on a cell phone that might later serve to establish the device owner or user's identity is tantamount to a general warrant); *People v. Coke*, 461 P.3d 508, 516 (Colo. 2020) (holding that a warrant authorizing a search of "all texts, videos, pictures, contact lists, phone records, and any data that showed ownership or possession" violated the Fourth Amendment's particularity requirement).

[23] *Macasaet*, 2025 WL 499893, at *16; *see also Commonwealth v. Snow*, 160 N.E.3d 277, 288 (Mass. 2021) (holding that "to be sufficiently particular, a warrant for a cell phone search presumptively must contain some temporal limit"). Temporal limits also help ensure that the scope of the search authorized by a warrant is constrained by the scope of probable cause.

But even if the warrant particularly described the items that law enforcement could seize, it did not particularly describe the "place" to be searched. Instead, the warrant in this case authorized a "forensic examination of *all electronic data* at an off-site location,"[24] and it did not limit the search to only particularly described areas within the phones — for example, to particular types of data, to data acquired during a particular timeframe, or to data found within particular applications.

Because the warrant seemingly authorized a generalized search of *all* of the cell phone's electronic data, *i.e.*, it did not comply with the particularity requirement, we conclude that the search warrant in this case was an unlawful general warrant. Thus, the search of Lookhart's cell phone — and the seizure of the text messages, photos, and videos located within the phone — was unconstitutional.

*The evidence was not admissible based on the independent source exception to the exclusionary rule*

"[T]he exclusionary rule renders inadmissible evidence obtained indirectly as a result of an unlawful search or seizure as well as evidence directly obtained thereby."[25] Given our holding that the search warrant was constitutionally infirm, evidence directly or indirectly obtained from the unlawful search of Lookhart's and Cranford's cell phones must be suppressed, unless an exception to the exclusionary rule applies.[26]

On appeal, the State argues for the first time that an exception to the exclusionary rule applies with regard to the search of Lookhart's phone: the

---

[24] Emphasis added.

[25] *Smith v. State*, 948 P.2d 473, 477 (Alaska 1997) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

[26] *Id.* Later in this opinion, we separately address the State's argument that Lookhart does not have standing to challenge the evidence obtained from Cranford's cell phone.

independent source doctrine. Under this doctrine, when evidence is obtained pursuant to an unlawful search, the exclusionary rule ordinarily will prohibit the use of that evidence, but it will not prohibit the use of evidence that was obtained from an independent source or by means that are "so attenuated as to dissipate the taint [of the unlawful search]."[27] Thus, if the challenged evidence was obtained "by exploitation of [the prior] illegality" rather than "by means sufficiently distinguishable to be purged of the primary taint," the evidence must be suppressed, along with the primary evidence yielded by the initial illegal search.[28] But when "the disputed evidence stems from an independent and lawful source, even though it could have emerged from the prior unlawful search as well, the evidence is admissible."[29]

The State points out that, even if the original cell phone search was unlawful, Cranford later filed a document stating that she "knowingly and voluntarily waiv[ed] any objections and g[ave] consent to search the contents of her cell phone." After this, a state investigator submitted an addendum to the original warrant to the district court. The addendum cited Cranford's consent and stated that evidence found on Cranford's phone "showed Lookhart used his iPhone during the commission [of the crimes], and to facilitate the said crimes." The court granted the State's request to conduct a second search of Lookhart's phone.[30]

---

[27] *Kalmakoff v. State*, 257 P.3d 108, 125 (Alaska 2011) (quoting *Wong Sun*, 371 U.S. at 417).

[28] *Cruse v. State*, 584 P.2d 1141, 1145 (Alaska 1978) (quoting *Wong Sun*, 371 U.S. at 488).

[29] *Id.*

[30] The State did not file this addendum in the superior court until several months after the jury returned its verdicts. When it filed the addendum, it also filed a "*Cruse/Starkey* Notice."

The State asserts that this addendum established an independent source for the evidence obtained from searching Lookhart's phone because it "cured any deficiencies" in the original warrant, even if the search that had previously been conducted pursuant to that warrant was unlawful. As support for its argument, the State relies on the Alaska Supreme Court's opinion in *Cruse v. State*[31] and on this Court's opinion in *Starkey v. State*.[32]

In *Cruse v. State*, the Alaska Supreme Court held that an unlawful warrantless search of a vehicle's trunk did not taint a subsequent warrant to search the vehicle because the warrant was based on probable cause that was entirely independent of the prior illegality.[33] Similarly, in *Starkey v. State*, after the police entered the defendant's house without his consent, they obtained a search warrant and then seized evidence from the house as authorized by the warrant.[34] This Court held that, as long as the warrant was not tainted by the prior entry into Starkey's house, it was an "independent source" that justified the subsequent seizure of the evidence from Starkey's residence.[35]

But these cases do not stand for the proposition that the State may "cure" an unlawful search by submitting new information in an addendum to an invalid search warrant. Instead, these cases demonstrate that when the police first conduct an illegal search and they then conduct a second search pursuant to a search warrant that is free of any taint from the prior illegality, the evidence obtained from the second search need

---

[31] *Cruse*, 584 P.2d at 1145.

[32] *Starkey v. State*, 272 P.3d 347, 348-52 (Alaska App. 2012).

[33] *Cruse*, 584 P.2d at 1145.

[34] *Starkey*, 272 P.3d at 348.

[35] *Id.* at 351-52.

not be excluded.[36] As explained by Alaska Supreme Court, the question is whether the disputed evidence was obtained from an independent and lawful source, even if it may also have emerged from the prior unlawful search.[37]

As we have explained, the State claims that the text messages were lawfully obtained not only from the initial unlawful searches, but also from the addendum and the related district court order granting the State's request to conduct a second search of Lookhart's phone, which it claims was a valid, independent source. But when the State sought the district court's permission to conduct the second search, it did so in an addendum that was attached to the original, invalid search warrant. And the addendum specifically referred to the text messages which were seized when the police conducted the previous unlawful searches. It is therefore difficult to imagine how the addendum could be viewed as free from the taint of the prior illegality.

Furthermore, even if the addendum authorized a second independent search, the addendum itself did not satisfy the search and seizure provisions of the United States and Alaska Constitutions. In order to pass muster under these constitutional provisions, the police must have obtained a search warrant (1) based "upon probable cause," (2) "supported by Oath or affirmation," and (3) "particularly describing the place to be searched, and the person or thing to be seized."[38] Here, the court granted the State's request to conduct an additional search based on an unsworn statement, without making a finding of probable cause. Additionally, the search

---

[36] *Cruse*, 584 P.2d at 1145; *Starkey*, 272 P.3d at 348-52.

[37] *Cruse*, 584 P.2d at 1145.

[38] U.S. Const. amend. IV; Alaska Const. art. I, § 14; *see Dalia v. United States*, 441 U.S. 238, 255 (1979) (explaining that warrants must (1) "be issued by neutral, disinterested magistrates," (2) "demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense," and (3) "particularly describe the things to be seized, as well as the place to be searched" (internal quotations and citations omitted)).

authorized by the court did not set out the specific items the police could search for or the parts of Lookhart's phone that could be searched.

Thus, even if we accept the State's argument that Cranford's consent provided a valid basis to issue a second search warrant, the court order that the State obtained by submitting the addendum did not otherwise comport with basic requirements of the search and seizure provisions of the United States and Alaska Constitutions and accordingly could not have been a "lawful" independent source.

Finally, we note that the record contains no indication that the police actually conducted a second search of Lookhart's cell phone after the addendum was signed by the district court judge. Instead, the record before us indicates that the sole search of Lookhart's cell phone was the forensic analysis that was conducted shortly after the original warrant was executed, prior to the filing of the motions to suppress. In other words, the record does not show that Lookhart's text messages were obtained both from the original unlawful search, and independently, from a lawful search authorized by the addendum.[39] Thus, unlike the situations in *Cruse* and *Starkey*, the challenged evidence in this case was not obtained from a second search based on an independent source; instead, the evidence was only obtained from the original, unlawful search.

For these reasons, we reject the State's argument that Cranford's consent, and the issuance of the addendum, provided a lawful basis for the admission of the disputed evidence.

---

[39]   Indeed, even if the addendum provided a lawful independent source, the addendum and the *Cruse/Starkey* Notice were not filed with the court until after Lookhart's trial, depriving Lookhart of the opportunity to challenge the admissibility of evidence obtained as a result of these documents. *See* Alaska R. Crim. P. 37(e)(2) ("The prosecutor shall file notice of subsequent warrants issued in relation to the case once executed.").

*This case must be remanded for further proceedings regarding whether*
*Lookhart had standing to challenge the search of Cranford's cell phone*

As we just explained, the original search warrant (3AN-17-00529SW), through which the police obtained evidence from Lookhart's and Cranford's phones, and the search warrant addendum, violated the United States and Alaska Constitutions. On appeal, Lookhart argues that under the exclusionary rule, the superior court accordingly should have suppressed all evidence obtained from Lookhart's and Cranford's phones.

The State, by contrast, argues that Lookhart is only entitled to the suppression of the evidence that the police obtained from his phone in violation of his constitutional rights. In other words, the State argues that Lookhart is not entitled to suppression of evidence from *Cranford's* phone because he lacks standing to challenge the search of Cranford's phone — *i.e.*, because he had no reasonable expectation of privacy in the contents of Cranford's phone. The State points out that, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."[40]

In response, Lookhart argues that the State waived the right to contest standing on appeal because it did not raise the issue of standing in the trial court. In support of this waiver argument, Lookhart cites to the general rule, as articulated by

---

[40] *See Alderman v. United States*, 394 U.S. 165, 174 (1969) (explaining that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted"); *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (holding that a defendant generally may not move to suppress evidence based on a claim that the evidence was obtained in violation of someone else's property rights); *Newcomb v. State*, 779 P.2d 1240, 1244 (Alaska App. 1989) (holding that a defendant did not have standing to assert a violation of a codefendant's Fourth Amendment rights because the defendant did not show either "(1) that a police officer obtained the evidence as a result of gross or shocking misconduct, or (2) that the officer deliberately violated a codefendant's rights" (quoting *Waring v. State*, 670 P.2d 357, 363 (Alaska 1983))).

this Court, "that the [S]tate cannot argue that a defendant does not have standing to raise a suppression issue when the [S]tate has not contested this issue in the court below."[41]

The trial court record suggests that Lookhart may have been seeking to suppress evidence from both his phone and Cranford's phone. However, Lookhart never asserted that he had a possessory or privacy interest in Cranford's phone, and no factual record was developed regarding this claim.[42]

Lookhart filed two motions to suppress in superior court. In the first motion, Lookhart joined Cranford's motion to suppress by filing a notice stating that Cranford's arguments "are exactly those that [he] could file separately." This statement implied that Lookhart was asking the court to suppress evidence obtained from *his* cell phone, just as Cranford was seeking suppression of evidence obtained from her cell phone.

In the second motion, however, Lookhart repeatedly used the plural term "cell phones" when he identified the evidence that he wanted the court to suppress. At the same time, Lookhart did not provide any basis for asserting a privacy interest in Cranford's phone, and it appears that the superior court itself did not interpret

---

[41] *D'Antorio v. State*, 837 P.2d 727, 730 (Alaska App. 1992).

[42] The Ninth Circuit has provided this explanation of what "standing" means in the context of Fourth Amendment claims:

> The term "standing" is often used to describe an inquiry into who may assert a particular fourth amendment claim. Fourth amendment standing is quite different, however, from "case or controversy" determinations of article III standing. Rather, it is a matter of substantive fourth amendment law; to say that a party lacks fourth amendment standing is to say that his reasonable expectation of privacy has not been infringed. It is with this understanding that we use "standing" as a shorthand term.

*United States v. Taketa*, 923 F.2d 665, 669-70 (9th Cir. 1991) (citing *Rakas*, 439 U.S. at 139-40).

Lookhart's motion as requesting suppression of the evidence from both phones, instead limiting its order to evidence taken from Lookhart's phone:

> Viewing the affidavit in its entirety and in a commonsense manner, it is clear that the district court judge was within his discretion to find probable cause to search and seize *Lookhart's cellphone* in connection with his alleged conspiracy with Cranford. (Emphasis added.)

We have previously held that the State cannot argue for the first time on appeal that a defendant lacks standing to raise a Fourth Amendment claim when the State did not contest this issue in the trial court.[43] But we have also recognized that there could potentially be situations in which the State is permitted to raise standing for the first time on appeal.[44] We conclude that this is such a situation.

In three of our prior cases — *Murdock v. State*, *Kvasnikoff v. State*, and *D'Antorio v. State* — we determined that the defendant had sufficiently asserted, during the trial court proceedings, an interest in the location or object that was searched, triggering the State's duty to contest standing in order to preserve the argument for appeal.[45] For example, in *Murdock*, the defendant "clearly asserted that he had standing in his suppression memorandum filed in the trial court," but the State waited until the appeal to object to Murdock's standing.[46] Similarly, in *D'Antorio*, the defendant

---

[43]  *See Murdock v. State*, 664 P.2d 589, 595 (Alaska App. 1983); *Kvasnikoff v. State*, 804 P.2d 1302, 1306 n.1 (Alaska App. 1991); *D'Antorio*, 837 P.2d at 730; *see also Steagald v. United States*, 451 U.S. 204, 209 (1981) (recognizing that the government may lose the right to argue standing on appeal "when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation").

[44]  *Kvasnikoff*, 804 P.2d at 1306 n.1.

[45]  *See Murdock*, 664 P.2d at 595; *Kvasnikoff*, 804 P.2d at 1306 n.1; *D'Antorio*, 837 P.2d at 730.

[46]  *Murdock*, 664 P.2d at 595.

consistently asserted his possessory interest in the car that was searched, and although the trial court had ordered the State to produce evidence to dispute this claim, the State never did.[47] And in *Kvasnikoff*, the State did not object to consideration of the defendant's claim on the merits in the trial court and as a result, "the [trial] court did not inquire into the factual circumstances relating to the issue of standing."[48]

In each of these cases, we determined that the State could not claim on appeal that the defendant lacked standing to raise a suppression issue when the State had not contested this issue in the trial court. But notably, in each of these cases, we reviewed the record and concluded that the record was clear that the State received adequate notice that the defendants were asserting a third party's possessory or privacy interest.[49]

By contrast, in the present case, it is not clear from the record that the State received adequate notice that Lookhart sought suppression of evidence from his *and* Cranford's cell phones. As we noted earlier, while Lookhart's second motion to suppress did reference the fact that he sought to suppress evidence from both "cell phones," Lookhart did not assert a possessory or privacy interest in Cranford's phone, and it appears from the superior court's order that the court itself did not interpret Lookhart's motion as requesting suppression of the evidence from both phones.[50]

---

[47]  *D'Antorio*, 837 P.2d at 730.

[48]  *Kvasnikoff*, 804 P.2d at 1306 n.1.

[49]  *See Murdock*, 664 P.2d at 595; *Kvasnikoff*, 804 P.2d at 1306 n.1; *D'Antorio*, 837 P.2d at 730.

[50]  Unlike the prior cases we cited above, where there was a single search — in *Murdock*, the search of a third party's apartment; in *Kvasnikoff*, the search of the co-defendant's home; and in *D'Antorio*, the search of the defendant's rental car — there were *two* searches at issue here (the search of Lookhart's phone and the search of Cranford's phone). Thus, the filing of the suppression motion alone would not necessarily have put the State on notice of Lookhart's assertion of standing in both places searched. While

On this record — where it is unclear the State received adequate notice to raise standing in the trial court — we conclude that the State may raise standing for the first time on appeal. We therefore remand this matter to the trial court so that the parties may develop a sufficient record to resolve the standing issue.[51]

*Additional issues that the superior court must decide on remand*

At Lookhart's trial, the State introduced evidence that was discovered on Lookhart's phone and also introduced evidence that was discovered on Cranford's phone. In light of our holding that the original search warrant and the warrant addendum violate the search and seizure provisions of the United States and Alaska Constitutions, the superior court erred by not suppressing evidence that the State solely obtained from *Lookhart's* phone. But because it is unclear from the appellate record whether Lookhart had standing to challenge the search of *Cranford's* phone, we cannot determine at this juncture whether evidence from Cranford's phone must also be suppressed.

On remand, the superior court should first decide whether Lookhart has standing to challenge the search of Cranford's phone. If the court determines that Lookhart does *not* have standing to vicariously assert Cranford's Fourth Amendment rights, then the exclusionary rule would not apply to evidence obtained from Cranford's phone and the court should reassess its verdicts without consideration of the evidence derived from the search of Lookhart's cell phone.

---

Lookhart repeatedly cited to "cell phones" in his second motion to suppress, his focus was on the deficiencies in the warrant itself.

[51] *See Combs v. United States*, 408 U.S. 224, 227-28 (1972) (holding that the intermediate appellate court erred in holding that Combs lacked standing when the government raised the standing issue for the first time on appeal, and determining that remand was appropriate since the record was "virtually barren of the facts necessary to determine whether petitioner had an interest in connection with the searched premises that gave rise to 'a reasonable expectation (on his part) of freedom from governmental intrusion' upon those premises").

On the other hand, if Lookhart *does* have standing to challenge the search of Cranford's phone, then the court must next address an argument raised by the State: whether evidence that was obtained from searching Cranford's phone was nevertheless admissible based on the consent she provided in connection with her plea agreement. Lookhart challenges this contention, arguing that Cranford's consent was given in order to resolve charges against her that (according to Lookhart) were the direct result of the prior unlawful searches of their cell phones. He therefore contends that Cranford's consent was tainted by the unlawful searches. On remand, the superior court should allow the parties to litigate this question, including allowing them to further develop the factual record if needed.

Once the trial court has determined whether any of the evidence obtained from Cranford's cell phone was properly admitted at trial, the court should next determine what effect its ruling has on Lookhart's conviction. Because Lookhart received a bench trial, we direct the superior court to reconsider its verdicts in light of (1) our directive to suppress the evidence obtained from Lookhart's phone, and (2) the findings it makes on remand about the admissibility of the evidence obtained from Cranford's phone.

*Conclusion*

We accordingly REVERSE the superior court's order denying Lookhart's motion to suppress the evidence obtained from the search of his own phone. However, we REMAND this case to the superior court for further proceedings as to the admissibility of the evidence obtained from Cranford's cell phone. The court should then reconsider its verdicts, excising the evidence from Lookhart's phone and any inadmissible evidence from Cranford's phone. We do not retain jurisdiction.

2805